IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CITIBANK N.A., and<br>CITIGROUP GLOBAL MARKETS, INC., | : | CIVIL ACTION |
| Plaintiffs, | : | |
| v. | : | No. 15-3298 |
| ROBERT V. KYLE, III, | : | |
| Defendant. | : | |

# MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                                                                  **JUNE 16, 2015**

Presently pending before the Court is a Motion for Temporary Restraining Order ("TRO"), a Preliminary Injunction and Expedited Discovery filed by Plaintiffs, Citibank, N.A. ("Citibank"), and Citigroup Global Markets, Inc. ("CGMI") (collectively, "Citi"), and the Response in Opposition filed by Defendant, Robert V. Kyle, III ("Kyle"). For the reasons set forth below, Citi's Motion for a TRO is granted.

**I.      BACKGROUND**

Kyle commenced employment with Citi in August 2010. In connection with his employment, Kyle executed a Dual Employment Agreement ("Employment Agreement"). The Employment Agreement included the following two provisions: (1) restrictive covenants prohibiting Kyle from, inter alia, soliciting Citi's clients for one year following his termination; and (2) provisions in which he agreed to keep information about Citi's client information confidential. (See Citi's Mot., Ex. C. (Employment Agreement))

Regarding the confidentiality of Citi's information, the Employment Agreement

provided as follows:

> Confidentially Owed to Citibank and CGMI:
>
> (a) You understand and agree that in the course of performing activities for Citibank and CGMI, you will have access to, or be exposed to, confidential and proprietary information and trade secrets about Citibank's and CGMI's businesses, including information about their customers. In this regard, you acknowledge that such information, including the list, or lists, of customers, in whatever form, and as they may exist from time to time, and any other personal or financial information pertaining to such customers, including but not limited to their addresses, telephone numbers, investment objectives and risk preferences, are valuable, special and unique assets of Citibank's and CGMI's businesses that Citibank and CGMI have expended an immeasurable amount of time and money to acquire.
>
> (b) You agree that you will not, during or after the term of your employment with Citibank and/or CGMI, disclose any information pertaining to Citibank's and/or CGMI's customers or the manner in which Citibank and CGMI conduct their business, to any person, corporation, association, or other entity except as permitted by current Citibank and/or CGMI policies as amended from time to time or as permitted by applicable law or regulation. Nothing contained in this Dual Agreement is intended to prohibit you from responding to any court order or subpoena, or to a request for information from or to cooperate with any governmental or regulatory entity.

(Id., Ex. C, Employment Agreement, ¶ 4.)

The Employment Agreement provides that Kyle agreed not to solicit Citi's clients for a period of one year after the termination of his employment:

> Non-Solicitation of Clients:
> During your employment and for the one-year period following the termination of your employment for any or no reason, you will not in any way, directly or indirectly, induce or attempt to induce or otherwise counsel, advise, encourage or solicit any client or customer of Citi to terminate their relationship with Citi or to transfer assets away from Citi.

(Id., Ex. C, Employment Agreement, ¶ 10(b).) Furthermore, Kyle agreed to an injunction in the

event that he breached his obligations with respect to returning Citi's confidential information or soliciting Citi's clients or employees:

> You acknowledge that should you breach this Paragraph in any way, Citi will suffer immediate and irreparable harm and that money damages will be inadequate relief. Therefore, you agree that Citi will be entitled to injunctive relief to enforce this paragraph and you consent to the issuance by a court of competent jurisdiction of a temporary restraining order, preliminary or permanent injunction to enforce rights herein, and/or all other remedies as may be applicable under Citi policies.

(Id.)

On May 11, 2015, Kyle resigned from Citi.[1] On that same day, he became associated with Morgan Stanley. Since joining Morgan Stanley, Citi asserts that Kyle has breached the restrictive covenants he entered into with them causing them irreparable injury, which entitles them to temporary and preliminary injunctive relief. Specifically, Citi alleges that Kyle solicited Citi's clients to transfer its accounts to Morgan Stanley.

On Friday, June 11, 2015, Citi filed its Complaint alleging: Breach of Contract; Misappropriation of Trade Secrets; Breach of Fiduciary Duty; Breach of Duty of Loyalty; Intentional and Negligent Interference with Actual and Prospective Economic Advantages; and Unfair Competition. See Compl. Additionally, on June 12, 2015, they filed a Motion for TRO, a Preliminary Injunction and Expedited Discovery seeking to restrain and enjoin Kyle from further breaching his agreements with Citi until such time as an arbitration panel appointed by the Financial Industry Regulatory Authority ("FINRA") can decide the merits of the underlying

---

[1] "The Protocol for Broker Recruiting" ("Protocol") is not at issue in this case because Kyle neither invoked it in his resignation nor followed its procedures.

dispute.² Pursuant to the consent of the parties, the Honorable Timothy J. Savage, acting as an emergency judge, ordered certain narrow restrictions upon Kyle in dealing with clients which were supposed to expire upon the commencement of the hearing before this Court on Monday, June 15, 2015. (Doc. No. 8.)

On June 15, 2015, a hearing was conducted on the outstanding motion. At the hearing, Kyle was present and attorneys for both parties presented arguments. Kyle's attorney submitted an affidavit by Kyle, which is part of the record. Based upon the submissions by the parties, as well as the arguments presented during the hearing, this Court concludes that Citi is entitled to a TRO.

## II.     LEGAL STANDARD

"A TRO is an extraordinary form of relief, designed to temporarily maintain the status quo (generally for 14 days, and on rare occasions for longer) while the parties prepare to litigate the issues on a motion for a preliminary injunction." Pileggi v. Aichele, 843 F. Supp. 2d 584, 592 (E.D. Pa. 2012) (citation omitted). "Preliminary injunctive relief is an 'extraordinary remedy' and 'should be granted only in limited circumstances.'" Kos Pharm., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004). "The standard for granting a temporary restraining order under Federal Rule of Civil Procedure 65 is the same as that for issuing a preliminary injunction." Pileggi, 843 F. Supp. 2d at 592 (citing Bieros v. Nicola, 857 F. Supp. 445, 446 (E.D. Pa. 1994)).

---

²FINRA Rule 13804 provides, "[i]f a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order." FINRA Arbitration Rule 13804(b)(1).

A TRO order may be appropriate where the movant has made reasonable efforts to provide notice,[3] and demonstrated the following four elements: (1) a likelihood of success on the merits; (2) the probability of irreparable harm if the relief is not granted; (3) that granting injunctive relief will not result in even greater harm to the other party; and (4) that granting relief will be in the public interest. Id. (citing Bieros v. Nicola, 857 F. Supp. at 446; Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 (3d Cir. 1988); Allegheny Energy, Inc. v. DQE, Inc., 171 F.3d 153, 158 (3d Cir. 1999) (setting forth the four elements for demonstrating need for preliminary injunction)).

## III. DISCUSSION

### A. *Likelihood of Success on the Merits*

There are seven separate counts in Citi's Complaint. Focusing on the main count of Breach of Contract, we find that Citi will likely succeed on the merits of that claim. Citi argues that Kyle signed a valid Employment Contract containing a strict Non-Solicitation of Clients provision for a period of one year after the termination of Kyle's employment. Under New York law, the elements of a cause of action for breach of contract are: "(1) the existence of a contract, (2) the plaintiff's performance under the contract, (3) the defendant's breach of the contract, and (4) resulting damages."[4] Palmetto Partners, L.P. v. AJW Qualified Partners, LLC, 83 A.D.3d 804, 806 (N.Y. 2011). There is no question that an Employment Contract exists, which clearly reflects the terms and conditions of the agreement. Likewise, there is no issue that Citi

---

[3] Citi Plaintiffs have provided adequate notice. An attorney representing Kyle filed a brief in opposition to the Motion and argued at the TRO hearing.

[4] The Employment Contract provides that New York law governs. (Citi's Mot., Ex. C., Employment Agreement, ¶ 11.)

5

performed under the Employment Agreement. Under the Employment Agreement, resultant damages are garnered if Kyle has solicited Citi's clients while at Morgan Stanley. As evidence of Kyle's alleged breach of the Employment Agreement, Citi has presented the declaration of Barbara McCollum ("McCollum"), a Regional Market Manager for Citibank, N.A. (See McCollum Decl. ¶ 1.) In her Declaration, McCollum states:

> On information and belief, since joining Morgan Stanley, Defendant has been soliciting the Citi clients he formerly serviced. At least three Citi clients have informed us that Kyle solicited them to move their accounts to Morgan Stanley. First, Kyle contacted a long-term High Net Worth client serviced by Rosenberg to solicit him to transfer his business to Morgan Stanley. Rosenberg had worked with this client's family for at least ten years prior to Kyle's solicitation. Second, Kyle contacted a long-term Ultra High Net Worth client serviced by Rosenberg to solicit him to transfer his business to Morgan Stanley. Rosenberg had worked with this client for at least ten years prior to Kyle's solicitation. Third, Kyle contacted another Ultra High Net Worth client to solicit him to transfer his business to Morgan Stanley. Rosenberg had worked with this client for the last three years. As indicated above, prior to being assigned to assist Rosenberg in 2014, Kyle had no relationship with any of Rosenberg's clients.
>
> At least one account for which Kyle was the Investment Counselor at Citi already has switched to Morgan Stanley. This account is in excess of $2 million.
>
> On information and belief, without misappropriating Citi's confidential and proprietary client information, Defendant would not have possessed the Citi clients' private personal phone numbers and would not have had the ability to call Citi clients.

(Id. ¶¶ 38-40.) Importantly, McCollum's Declaration unequivocally states that Kyle has been soliciting Citi's clients since he started working for Morgan Stanley.

On the other hand, Kyle's Declaration states that "When I transitioned from Citi to Morgan Stanley on May 11, 2015, I followed the exact guidelines Citi had given me five years

<u>before</u> on how to give clients notice without soliciting them." (Kyle Decl. ¶ 10.) It is unclear how guidelines from five years prior, which have not been provided to the Court, fit in with the clearly stated Non-Solicitation provision of the Employment Contract. Likewise, relying upon Kyle's own words, it is unclear whether he solicited clients while at Morgan Stanley under the express terms of the Employment Contract.

Upon consideration of McCollum's Declaration and Kyle's Declaration, we conclude that there is a likelihood that Citi will succeed on the merits of its Breach of Contract claim. As such, this factor weighs in favor of granting the TRO.

### B. *The Risk of Irreparable Harm*

Citi argues that there is a substantial threat of irreparable harm if injunctive relief is not granted. Citi asserts that it is impossible to determine the extent of Citi's future economic loss in the absence of an injunction, and that the loss of client confidence will occur.

"In order to demonstrate irreparable harm the plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial." <u>Campbell Soup Co. v. ConAgra, Inc.</u>, 977 F.2d 86, 91 (3d Cir. 1992) (citations omitted). "Trade secrets of an employer, customer goodwill and specialized training and skills are all legitimate interests protectable through a general restrictive covenant." <u>Vector Security, Inc. v. Stewart</u>, 88 F. Supp. 2d 395, 400 (E.D. Pa. 2000). "Customer goodwill and confidential business information have each been recognized as legitimate business interests that may be afforded protection by a restrictive covenant." <u>Fisher Bioservices, Inc. v. Bilcare, Inc.</u>, No. 06-567, 2006 WL 1517382, at *13 (E.D. Pa. May 31, 2006); <u>see</u> <u>also</u> <u>Charles Schwab & Co., Inc. v. Karpiak</u>, No. 06-4010, 2007 WL 136743, at *13 (E.D. Pa. Jan. 12, 2007).

We are of the opinion that Citi has a legitimate interest in protecting its investments and in maintaining confidential client information and client trust. It is this Court's view that the threat of irreparable injury is present in the instant case as a monetary price cannot be placed on such matters as potential loss of goodwill and customer confidence under the facts presented here. Therefore, monetary damages would not be sufficient to make Citi whole, and it risks irreparable injury if the TRO is not granted. Thus, we find that this factor weighs heavily in favor of granting the TRO.

### C. *Injunctive relief will not result in even greater harm to the other party*

Kyle asserts that injunctive relief will prevent him from working with his clients as their financial advisor. There is no doubt that Kyle will be negatively impacted if a TRO is granted. However, under the facts of this case, it is not clear that he will suffer greater harm than Citi. Thus, a balancing of the harms, which the parties would suffer upon our decision to grant or deny a TRO, is not determinative.

### D. *Public Interest*

Finally, there are compelling public interests of enforcing valid contractual provisions and protecting business investments, as well as confidential customer information. See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Napolitano, 85 F. Supp. 2d 491, 499 (E.D. Pa. 2000) In this case, all of these are present. As such, Citi has shown that the interests of the public favor granting the TRO.

## IV. CONCLUSION

For the foregoing reasons, Citi's Motion for a TRO is granted.

An appropriate Order follows.